Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 6117 | DATE | 8/25/2003 |
| CASE TITLE | Financial Network Investment Corporation vs. Wayne L. Thielbar, et. al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion to Compel Arbitration [11-1] and Renewed Motion to Compel Arbitration [32-1]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, defendants' motion to compel arbitration is GRANTED [11-1, 32-1]. Defendants' motion to dismiss is DENIED as moot [25-1]. Plaintiff's motion for summary judgment is DENIED as moot [29-1]. Defendants' alternative motion for summary judgment is DENIED as moot [32-2]. All other motions are moot and terminated. This action is stayed pending resolution of the arbitration before the National Association of Securities Dealers.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | 34 |
| X | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 AUG 25 PM 6:05 | date mailed notice | |
| | klb (lc) courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
AUG 2 6 2003

| | | |
|---|---|---|
| **FINANCIAL NETWORK INVESTMANT CORPORATION,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 02 C 6117** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **WAYNE L. THIELBAR, JUDITH K. THIELBAR, JEAN L. WILLIAMS, and HOWARD W. HANSEN,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

On or about July 17, 2002, Financial Network Investment Corporation ("FNIC") was served with a Statement of Claim in Arbitration ("SOC") that was filed by Defendants at NASD-DR. The SOC contains allegations related to the purchase of ETS Payphone, Inc. ("ETS") leases through John C. Comer, a former registered representative of FNIC. On August 27, 2002, FNIC filed its Complaint for Injunction and Declaratory Judgment in this Court. FNIC contends that defendants' claims are not arbitrable. Before this court is defendants' motion to compel arbitration. For the reasons set forth below, defendants' motion is granted.

I. Factual Background

FNIC is a California corporation with its principal place of business in Torrence, California. FNIC is engaged in business as a broker-dealer in securities, registered as such with the U.S. Securities and Exchange Commission ("SEC"), the states of California and Illinois, among others, and is a member of the securities industry self regulatory organization ("SRO")

34

known as NASD Regulation, Inc. ("NASD-R") (f/k/a the National Association of Securities Dealers, Inc., "NASD"). Wayne Thielbar ("W. Thielbar") is an individual, residing in Sterling, Illinois. Judith Thielbar ("J. Thielbar") is an individual, residing in Sterling, Illinois. Wayne and Judith Thielbar are married. Jean Williams is an individual, residing in Rock Falls, Illinois. Howard Hansen is an individual, residing in Sterling, Illinois.

On or about July 17, 2002, FNIC was served via mail with a SOC filed with NASD Dispute Resolution, Inc. on behalf of W. Thielbar, J. Thielbar, Williams, and Hansen. The SOC alleges that FNIC, through its licensed agent, John R. Comer ("Comer"), fraudulently sold unregistered securities to them and that FNIC was responsible for these sales under various doctrines, including the doctrines of controlling person liability, respondeat superior, licensing, agency, negligence per se, and negligent supervision. On August 27, 2002, FNIC filed suit in this Court seeking injunctive and declaratory relief. The defendants then filed a motion to compel arbitration.

II.   Discussion

In its complaint, FNIC seeks a Declaratory Judgment that defendants are not "customers" of plaintiff. In addition to claiming that defendants are not its "customers," plaintiff contends that the transactions at issue did not involve "securities" and that it is only required to arbitrate disputes arising out of, or in connection with, its securities business. Thus, plaintiff contends that no valid arbitration agreement between plaintiff and defendants exists that would require plaintiff to submit to arbitration. The defendants argue that they are customers who are entitled to arbitrate their claims against FNIC under NASD Rule 10301. NASD Rule 10301(a), provides as follows:

-2-

> Any dispute, claim, or controversy ... between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated person shall be arbitrated under this Code...upon the demand of the customers.

It is undisputed that FNIC is a member of NASD and is required to arbitrate certain disputes that fall within the purview of the NASD Code. As an initial matter, this Court must determine whether the arbitrators or the Court should decide if the current dispute is arbitrable. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 941-942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (affirming the decision of the United States Court of Appeals for the Third Circuit that the parties had not agreed to have arbitrators decide whether the parties agreed to arbitrate). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); see First Options, 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). In this case, there is no written contract between the parties, and thus there is no "clear and unmistakable evidence" that the parties intended to submit the question of arbitrability to the arbitrators. See First Options, 514 U.S. at 945.

This Court must determine whether the disputes must be arbitrated. Whether FNIC is required to arbitrate the disputes will depend upon the applicability of the NASD Code to the parties' disputes. John Hancock Life Ins. Co. v. Wilson, 254 F.3d 48, 58 (2nd Cir. 2001). In

arguing that the parties' disputes are not arbitrable under Rule 10301 of the NASD Code, defendant raises three arguments, each of which will be addressed in turn.

Plaintiff first argues that the defendants are not customers under the NASD Code. Rule 10301 of the NASD Code requires members to arbitrate any dispute between a customer and a member or associated person arising in connection with the business of such member or in connection with the activities of such associated persons. The NASD Code does not define the term "customer," although the definition section of the NASD manual provides that "the term 'customer' shall not include a broker or dealer." NASD Manual General Provisions § 0120(g). An "associated person of a member" is defined in pertinent part as "a sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member." Id. at By-Laws, Art I(ee). Narrow definitions of the term "customer" have been rejected. See, e.g., First Montauk Sec. Corp. v. Four Mile Ranch Dev Co., Inc., 65 F.Supp.2d 1371, 1381 (S.D. Fla. 1999) ("customer" is not limited to investors with accounts with member firm). Most courts have rejected the requirement of indicia of a direct customer relationship between the member and the customer. See, e.g., John Hancock, 254 F.3d at 60.

In this case, Mr. Comer's status as a licensed, registered representative of plaintiff qualifies Mr. Comer as an "associated person of a member." NASD Code at By-Laws, Art I(ee). See also John Hancock, 254 F.3d at 50 (applying NASD by-law definition). Mr. Comer's sales of financial products to defendants during the time period when he was acting as a registered representative of plaintiff evidences that defendants were Mr. Comer's customers, receiving

-4-

services and financial products from him. The relationship between defendants and Mr. Comer--customers of an agent or representative of a financial services firm--has been held by a number of courts to require the plaintiff NASD member to submit claims to arbitration upon the demand of plaintiff investors under NASD Rule 10301(a). E.g. Vestax Securities Corp. v. McWood, 280 F.3d 1078, 1082 (6th Cir. 2002) ("an agent or representative of a financial service firm is an 'associated person' under NASD Rule 10301(a) such that a relationship with the agent entitles the investor to the arbitration process"); John Hancock, 254 F.3d at 59 (holding that even though the investors were unaware of the agent's relationship with the financial services firm, the investors were customers under NASD Rule 10301(a)); Miller v. Flume, 139 F.3d 1130, 1136 (7th Cir. 1998) (NASD Rule 10301 "explicitly makes claims 'arising in connection with' transactions between a customer and an associated person arbitrable under the Code."); Daugherty v. Washington Square Securities, Inc., 2003 WL 21674799, *7 (W.D. Pa. July 9, 2003) (holding, in a case involving ETS payphones, that "[b]ased upon the plain, unambiguous language of NASD Rule 10301(a)" because the plaintiffs are customers of a registered representative of the defendant, they are customers of the defendant); Washington Square Sec., Inc. v. Aune, 253 F.Supp.2d 839, 845 (W.D.N.C. 2003) ("a customer or investor does not necessarily have to demonstrate that it dealt directly with the NASD member in order to demand arbitration"). Thus, the dispute at issue in this case arises between an associated person and his customers.

Defendants next argue that the parties' disputes are not arbitrable because they do not "aris[e] in connection with the business of such member" as required by Rule 10301. They argue, on the basis of Rule 10101, that it is not enough that the dispute arises in connection with

the activities of an associated person. Rule 10101 provides in pertinent part that the NASD Code is prescribed and adopted "for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member... between or among members or associated persons and public customers, or others..." Thus, according to plaintiff, the claim must relate to the business of the broker-dealer itself, not the registered representative. Even assuming, *arguendo*, that Rule 10101 limits the claims that are arbitrable under Rule 10301, this Court still finds that the claims arise from the business of the broker-dealer itself. The claim involves whether FNIC properly supervised its representative, Mr. Comer. Thus, it involves FNIC's business. See, e.g., Daugherty, 2003 WL 21674799 at * 7 (rejecting the argument that the claims that arise from the activities of the associated person do not arise from the member's business) (citing Vestax Sec. Corp., 280 F.3d at 1082 (holding that claims asserted against brokerage firms for failure to properly supervise their representatives arise in connection with the brokerage firms' businesses)). Accordingly, this Court concludes that defendants' claims arise in connection with plaintiff's business and consequently, defendants' claims fall within the scope of NASD Rule 10101.

Finally, plaintiff argues that the claims of defendants are not arbitrable because the investments at issue do not qualify as "securities" under the three-part test set forth in SEC v. W.J. Howey & Co., 328 U.S. 293, 301, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). They cite a recent decision by the Eleventh Circuit, which held that the leases offered by ETS Payphones, Inc., were not securities. See Securities and Exchange Commission v. ETS Payphones, Inc., et. al., 300 F.3d 1281, 1285 (11th Cir. 2002). In that case, the court found that the ETS leases were not securities because the returns on the leases were guaranteed by contract, and not derived from the

efforts of others, as required under Howey. Id. Because the lease purchases did not involve securities, the court found the transactions were not covered by federal securities laws. The exact same lease purchases are involved in the instant case. Plaintiff, however, has not pointed to any provision in the NASD Code that requires it only to arbitrate claims raised by customers who have purchased "securities" as opposed to other financial products from its registered agent. Other courts have rejected such a requirement. See, e.g., Miller, 139 F.3d 1130, 1136 (rejecting the argument that the dispute was not arbitrable because the transaction between the customer and brokers involved "fraudulent conveyances" and not the "buying and selling of securities"); Daugherty, 2003 WL 21674799 at * 8-10 (rejecting the argument that disputes regarding the sale of ETS leases were not arbitrable because ETS leases are not securities); Smith v. Bartolini, 2003 WL 21148940, *8 (N.D. Ill. May 14, 2003) ("the pertinent sections of the Code--Rules 10101 and 10301--do not tie arbitrability to the presence of a 'security' but instead refer to a 'dispute,' 'claim,' or 'controversy."); FNIC v. Becker, 762 N.Y.S.2d 25, 27 (N.Y. A.D. 2003) (finding that Rule 10301 does not require the sale of a security). Thus, in the absence of a requirement in the Code or the case law that the dispute must involve a security, this Court finds that the defendants' claims are arbitrable.

## Conclusion

For the foregoing reasons, defendants' motion to compel arbitration is GRANTED. This action is stayed pending resolution of the arbitration before the National Association of Securities Dealers.

Enter:

David H. Coar
United States District Judge

Dated: August 25, 2003